## JOHNSTON v. FIELD ET AL

ATTACHMENT.—*Judgment of Sale of Property Attached.—Title.*—In an attachment proceeding against a debtor, wherein property, which has been sold and transferred or conveyed, has been attached, the question as to whether it is liable to the attachment must, when it arises, be determined according to the ordinary rules of law.

SAME.—Where, on trial, it appears that the property attached is not liable to attachment, it is error to adjudge its sale.

SAME.—*Fraudulent Conveyance.- -Attachment of Real Estate.*—Where, in an attachment proceeding, based upon the alleged fraudulent sale and conveyance by the debtor of real estate attached, fraud upon the part of the purchaser is not established, it is erroneous to adjudge a sale thereof, though the fraud alleged be established upon the part of the debtor.

From the Benton Circuit Court.

*G. H. Chapman, U. J. Hammond* and *J. J. Hawes,* for appellant.

*W. A. Redding,* for appellees.

NIBLACK, J.—Samuel C. Curtis and James M. Fowler caused a writ of attachment to be issued out of the Benton Circuit Court against the goods and chattels and lands and tenements of John D. Johnston, and the sheriff seized upon said writ a stock of dry goods and other merchandise, with suitable fixtures for the sale thereof, and a lot of ground in the town of Oxford, in Benton county, valued at one thousand five hundred dollars.

As a cause for issuing the attachment upon the indebtedness set out in the complaint, the plaintiffs alleged in their affidavit, " that the said defendant has sold his property subject to execution, with the fraudulent intent to cheat, hinder, delay and defraud his creditors."

Marshall Field, Levi Z. Leiter, Lorenzo G. Woodhouse, Henry Field, Henry J. Welling and Joseph N. Field, the appellees, then doing business under the firm name of Field, Leiter & Co., filed a claim against the defendant, under such attachment proceedings, for the sum of one hundred and five dollars and eight cents, and in their affidavit stated substantially the same cause for the attachment as was alleged in the affidavit first filed, as above set forth.

Lee R. Lucas, claiming to have purchased the same of the defendant before the writ of attachment was issued, replevied the personal property, seized upon under the said writ, out of the hands of the sheriff, and such personal property was adjudged to be the property of said Lucas in such replevin proceeding, and before the trial the action was, by agreement, dismissed as to the said Curtis and Fowler, the original attaching creditors.

Upon the trial it was made substantially to appear, that the defendant owed Field, Leiter & Co. ninety-one dollars; that in November, 1875, the defendant, having been

engaged in the mercantile business for about four years at Oxford, and finding himself in embarrassed circumstances, sold his entire stock of goods, including notes and accounts, on a credit payable in instalments, to Lee R. Lucas, above-named, deducting twenty-five per cent. from the cost of the goods and the face of the notes and accounts, and taking notes with personal security for the payment of the purchase-money, at the price agreed upon between the parties; that, about the same time, he sold to one Calvin W. Tuttle, his brother-in-law, a resident of Columbia City, the lot of ground, on which there was a house, in the town of Oxford, seized upon by the writ of attachment as above stated, for the sum of twelve hundred dollars, receiving about fifty dollars in cash, and taking notes for the remainder of the purchase-money, payable, also, in instalments.

That, after thus making sale of his property, the defendant sent out a notice to his creditors, suggesting that they should have a meeting to consider what was best to be done under the circumstances, and saying to them: "Having failed to meet my obligations, I have sold out my entire stock;" that his creditors had a meeting in pursuance of said notice, on which occasion the defendant offered to turn over to them the proceeds of his property sold as above described, but no agreement was reached by the creditors, as to any plan for a settlement of their respective claims.

That the defendant, at the time of the sale of his property, owed the firm of Murphy, Johnston & Co., one of whose members was his brother, somewhere between eight and eleven thousand dollars, and the other persons in the aggregate about five thousand dollars.

That, soon after the meeting of his creditors, above referred to, the defendant transferred to Murphy, Johnston & Co. all the notes he had received for his property, both real and personal, to secure his indebtedness to said firm, they agreeing to settle with other creditors of the

defendant, as far as they could; that the notes thus trans-
ferred amounted to something over eleven thousand
dollars; that Murphy, Johnston & Co. have since settled
with some of the other creditors at from twenty to thirty
cents on the dollar; that the defendant had continued,
and was then, in the possession of the house and lot sold
by him to Tuttle, his brother-in-law; that the defendant
had agreed to pay rent for said house and lot, and had
received a recent notice that rent would be expected of
him soon, but that he had not, up to the time of the trial,
paid any rent; that, since the defendant had sold his stock
of goods to Lucas, he had remained in the store as a clerk
for Lucas, receiving pay for his services, from time to time,
and disclaiming any other or further interest, of whatever
nature, in such goods.

Upon these facts the court found that there was due
from the defendant to Field, Leiter & Co., the appellees,
the sum of ninety-one dollars, and that the attachment
proceedings ought to be sustained, and judgment was ren-
dered against the defendant for the amount so found due,
and the house and lot seized upon, under the writ of attach-
ment, were ordered to be sold to pay the judgment and costs
of suit.

The defendant moved the court for a new trial, upon the
ground that the evidence was not sufficient to sustain the
finding, as to the attachment proceedings; but the motion
was overruled, and error is assigned here upon that deci-
sion of the court below.

An attachment suit, as against the property seized, is a
proceeding in rem, and the court can only order such prop-
erty to be sold for the payment of the plaintiffs' claim,
upon the theory or assumption that it is the defendant's
property. 2 R. S. 1876, p. 100, sec. 161.

Whether the property attached is liable to the attach-
ment, is a question which is liable to arise upon the trial,

and, whenever it does arise, must be determined according to the ordinary legal rules, as any other question in the cause. *Bates* v. *Spooner*, 45 Ind. 489.

When it is made to appear, upon the trial, that the property attached is not liable to the attachment, it is error for the court to order such property to be sold under the attachment.

In Drake on Attachment, it is said, at section 234, that it is an established principle, which peculiarly affects attachments of real estate, that the attachment can only operate upon the right of the defendant existing when it is made.

Lands fraudulently conveyed, with the intent to delay or defraud creditors, may be attached. 2 R. S. 1876, p. 232, sec. 526. But, in order to establish the fraudulent character of the conveyance, it must be shown that the purchaser participated in the fraud. It is not necessary to quote authorities to sustain so well recognized a rule of law. See, however, *Chouteau* v. *Sherman*, 11 Missouri, 385, relating to personal property seized upon an attachment, but which we regard as equally applicable to real estate taken in the same way.

There are some circumstances connected with the case in hearing which were unfavorable to the appellant, and which tended to sustain the charge of fraudulent intent as to him, but we have been unable to see any thing in the evidence tending to show that the real estate taken under the attachment was not purchased by Tuttle in good faith, before the attachment was issued. In such cases, as in all the ordinary transactions of life, fraud is never presumed, but must be proved.

We are, therefore, of the opinion, that the evidence did not show the sale to Tuttle to have been a fraudulent one; within the meaning of the statute above referred to, and that, in consequence, the finding and judgment sustaining the attachment proceedings against the house and lot,

which had been previously purchased by him, were erroneous.

So much of the judgment as relates to the attachment proceedings is reversed, at the costs of the appellees, and the cause remanded for further proceedings not inconsistent with this opinion.